Please call the case. Case number 3-17-0808. Thane Hunt, appellant by Jeffrey Green v. City of Peoria, at the lead by John Genesis. Please proceed. Police report, counsel. My name is Jeffrey Green. I represent Thane Hunt in this matter. Thane was a Peoria police officer. On September 27, 2009, he was involved in a low-impact motor vehicle accident. He treated for that injury with physical therapy. He was released, full duty, returned to work on December 3, 2009. Subsequently, in his duty as a Peoria police officer, on January 25, 2010, he attended combat training. He had an injury in combat training, and four days later, he saw the occupational health doctor in the city of Peoria. That doctor made an emergent referral to a neurosurgeon, and he had emergency spine surgery that day for cauda equina. The issue in this case is what injury and what caused the work comp lien in this matter, which injury and which date it goes to. In this matter, the underlying motor vehicle accident case was settled for $75,000. The city of Peoria had paid a total of $125,000 for medical involved in this situation. The bulk of that medical, the lion's share of that medical, is all related to that surgery. Mr. Hunt was also disabled in his ability to do his job as a Peoria police officer after that surgery. There was an evidentiary hearing in this case to determine the merits of the lien. In that evidentiary hearing, there was two payment models introduced into evidence that the city generated. The city provided those to the parties in the lawsuit to discover. In the payment log, directly related to claim numbers and the date of accident in the city, related to the 9-2709 motor vehicle accident, that was a little over $5,000. The payment log corresponding to January 25, 2010, combat training injury, was $119,000. The city's position was that we get all of this settlement and we don't have to do anything. We can come in here, we're the city, it's a statutory right, we can take every penny of Mr. Hunt's money without showing any nexus, any relationship, or any connection to the injury involved. In the law, it simply does not support that. And the city, in this case, was given every opportunity to perfect their work content. After the case settled, we sent them a request to admit saying, they're denied this surgery is related to the motor vehicle accident. They're denied this part is related. They refused to answer that. And so we filed a motion to adjudicate their lien saying, you have given us nothing to say any of this is related. You've produced no medical opinion. You refuse to answer a simple request to admit to perfect your lien. And so we wanted to adjudicate the lien to zero. And then after a very torturous process, procedures you've probably read in the recent parties, we finally get to an evidentiary hearing, which I've discussed a little bit. And then, before the evidentiary hearing, stop for a second, they claim collateral assault stemming from the pension board's decision. On April 13, 2016, the court denies collateral assault applies. They filed a motion to reconsider. That's also denied. So if I don't get to the order of August 10, 2016 in this case, and Judge Koury in that order says that the depositions that were attempted to be admitted to the evidentiary hearing are not going to be admitted as the doctors are classified as unavailable, that's a portion of our briefs. It's certainly an issue we've raised, certainly not the main issue before you. We believe that those deposits should have been admitted pursuant to the Supreme Court Rule 212 under the exception for physicians for evidence depositions. But what Judge Koury decided was, okay, well, Mr. Hunts had a history of underlying spine issues and disease. I think that the motor vehicle accident aggravated that condition and said I think 10% of their lien should be awarded for about $12,000. The city filed a motion to reconsider, and we've got a new case, Judge McCuskey. There are more pleadings and back and forth on the issues. In October 26, 2017, Judge McCuskey ruled that this is a strict statutory construction, and as a matter of law, the city was entitled to the entire $75,000. He did not assess, rely on, or analyze any of the information at an entry hearing. And I think we get into a little bit of an issue here because as to speak over what standard the review applies, it's early to know. This is a statutory interpretation, and when he ruled, I even asked him specifically, is your ruling based on statutory construction? And he's like, yes, as a matter of law, I've decided it is based on New Yorker's Compensation. Statutory language is what my ruling is based on. The city's position is, well, there was an evidentiary hearing, so the standard is manifested in the evidence. So it's critical that I point out, I think, that Judge McCuskey based his ruling on statutory construction, and that's the nature of the appeal. I also want to note, because I'm sure they're going to talk about this. But Judge McCuskey didn't make any factual findings. Zero. None. At the same time, in that 10-26-17 hearing, the city had filed a motion that I had filed in reply. They again tried to rephrase the issue or resuscitate the issue of collateral estoppel, which was out of the case, denied, and denied a reconsideration in 2016, the year before that. Judge McCuskey recognized this and said, no, you're not going to bring that back up, and actually struck their pleading for the record in an attempt to re-raise that. Also, the issue of federal estoppel has been waived. The city did not avail itself of Rule 303 to file an appeal or file a cross-appeal on the issue. I spent a lot of time doing a brief trying to bring that up. But from my reading of the rules, my reading of the procedure, it is absolutely and completely barred and waived as an issue for their failure to comply with Rule 303 and file a cross-appeal on that. When you look at the case law, the case law is a little easier to go through than the process. All the cases they cite are based on one single incident or one single date of injury. There's no competing causes. And because of that, their cases are completely off-quote. In the case, they rely on Johnson. The issue of Johnson is a set-up. And Johnson actually goes on to cite one of the cases we relied on, Fred A. Tepper, and points that issue out. They relied on the Foster case. The Foster case was a jury trial. The plaintiff's attorney did not submit all of the bills that related to the work comp injury. So the issue was, hey, we still get our money back just because plaintiff's counsel is incompetent and didn't submit the bills. The Langley case is based on a case where a liability was apportioned to 50 percent of the defendant, 50 percent of the employer. And the issue there was, okay, does this 50 percent apportionment reduce or bar the employer from recovering their full lien? Again, one date of injury. These date of juries, that issue in that case was a death case, and the issue was what part of the work comp would attach it to the lawful death portion of the case versus the lawful consortium of the widow. Again, all one injury, one incident cases. Now, when you look at the Robinson case, this is a case where a plaintiff had a work injury. And two and a half years later, he has a surgery where medical malpractice is committed. That worker filed a medical malpractice case, which eventually was settled. Now, the work comp insurance had paid benefits before that surgery. After that case settled, the liberty mutual of the work comp insured that situation, came in and said, okay, look, you have this medical malpractice settlement. We're going to get our whole lien out of this. And the court said, not so fast. Take your hand out of the cookie jar, employer. They said, yes, you get to recover your lien, but only for the benefits you paid that were related to the malpractice. You don't get to take things unrelated to the malpractice.  And then Fred versus Pepper, I think his most, at least on the factual underpinnings, is the most similar to the case of a court of court. And Fred, who's an IDOT worker, he had an injury where it was third-party liability. And then about, I think it was about a month, got back to work, released to duty, similar to this case. And then he has another injury where there's no third-party liability in that case. Like in this case, the employer says, okay, we're taking everything from the reverse injury settlement when there's third-party liability. Now, where that case goes a little bit off of our facts is that case the court just came in and said, hey, employer, you've not proven a causal connection. You've not related your lien to this injury in this settlement. And I'm going to just adjudicate your lien as your own. There was not an evidentiary hearing in that case. And so while the court discussed the application of 5B in the right of the employer to recover their lien and that it has to be connected to payments from a third-party or a legal liability from a third-party, they said we're going to remand it for evidentiary hearing. We've already had an evidentiary hearing. The city had every opportunity, both parties had every opportunity to produce any evidence they wanted to regarding this lien. The city elected to not present a doctor, not present a medical record, not present anything, but simply rely on this idea of strict statutory construction. So when they relied on that and the judge accepted that, why would they put on evidence? The judge accepted that after the evidentiary hearing was heard. But their position at the time of the evidentiary hearing was all they had to show was this amount of money that was paid off, right? Correct. And then they argued strict liability, which ultimately was accepted by the judge. So they were standing for that proposition. That's why they took a legal position where their position was they didn't have to put any more evidence on except their payment, right? Yeah, correct. And the judge accepted that position. Eventually, yes, the court did accept that. I mean, initially, Judge Brewer rejected it. Judge McCuskey, at the end of the case, said, okay, look, I agree with you. This is strict statutory construction. But the case law clearly indicates that's not the status of the law in the state of Illinois. Robinson says, look, you can't take the whole lien. You can only take the amount of money that's actually related to that injury or that case. And Fretz says the same thing. And so I don't think that they have a super lien. I don't think they have a situation where they say, okay, look, no matter what the injury is,  Now, not to say we don't understand the value, the importance, the construct of the work comp lien. But in this case, they elected not to approve it. They elected to stand on statutory construction. And the plaintiff does not believe that's where the law is currently situated. We don't believe that that's what the work comp act says. You know, the language in 5B is where the injury for which compensation was payable was caused under circumstances, creating a legal liability for damages on the part of some person other than this employer to take damages. So clearly, you have to at least link the lien back to the part of some other party to take damages. And that hasn't been done in this case. It's never been done at any point in time. How do you do it in this kind of case, given the injury? I'm sorry. How would you do that, given the injuries, separating them out? The entry from the first accident is what? With medical evidence. Yeah. And the depositions of Dr. Pubey and Dr. Singh. But I mean, your position, the kind of injury in the first injury was what kind of injury? It was essentially a back sprain or sprain, and it was treated with physical therapy. Okay. And then the next one was more complicated, right? Correct. Correct. It involved combat training with fighting and rolling around and trunk rotation and force pull. Yes. And that injury was where? Was what part of the body, Jeff? Yeah. Yeah. To the spine and back. Yeah. It is the same part of the body injury. Right. I mean, that's my point. So what kind of medical evidence separates those out? I mean, there's a testimony of Dr. Pubey and a testimony of Dr. Singh. Because the second injury is a much more grave injury. That's when it was an emergency situation, right? Correct. Then the first kind of injury. And then there was therapy and he went back to work. Correct. The first injury. So your position is the doctors can really separate this out to make a very distinct, show a very distinct difference between these two. Right. Correct. I think it has to do with medical evidence. Judge Corey, before the injury hearing, we had a lot of discussions about this and this is all part of the record. And he kind of said to the city, he goes, I'm not saying you have to have some kind of but or causation or maybe even causation or connection that equates to what we have to have for plaintiff and civil court and more likely treatment not. He said, you have to show some nexus. You have to show some connection. He's like, I understand you believe and I understand that's an important consideration in these cases, but you've got to give me something. Okay. So. Not that way as Judge Corey's decision. It was the something where he came up with that number. That's a great question, Judge. Because here's the issue that I have with Judge Corey's ruling is that he didn't allow the medical evidence, but he came up with a basis of the lien based on an aggravation of a previous injury. Had he considered those ten positions, that ruling would have been absolutely, I think, correct and dead on. But I think he cuts his foundation out when he made that ruling. I think you heard the evidence. Are you challenging his ruling? Only on the unavailability of the deponents, of the admission of those doctors against their positions. But you're saying it wouldn't have made a difference because. I don't think it would have made a difference because it wouldn't have made much of a difference. I mean, the lien laws are blatantly clear. I mean, they paid $5,000 relating to the first injury and $119,000 relating to the second injury. I mean, that's their own lien laws, their own claim laws, their own claim numbers. So I also think that that's – it speaks for itself, really. I mean, they paid them associated with those dates based on their internal determination. Now they want to reclassify and jumble it up, and they created a special law just for the evidentiary hearings of putting everything together. It was created the week before, per the witness of the city's risk manager. Right. Your complaint about Corey is the denial of the attempt for – I think his – The evidence, right? I think that Corey is absolutely dead on having allowed the admission of those depositions in the wake of medical evidence. Because you support the ultimate conclusion. Absolutely. You're not saying, no, I don't support that. No, correct. Corey is wrong. Right. Thank you very much. I have another question. The injury from the second combat training was – I had to look up what – pronounce the term. Cauda? Yeah, I had to look it up. And isn't that an injury to nerves at the bottom of the spine? It is. So if that had been the same injury from the car accident, he would have been as disabled then as he was later. Yeah. Or sooner. Because we have a three-month gap between the car – four-month gap between the car accident and the training injury. You know, in four days after the training injury, they're rushing him to surgery, telling Mr. Hunt, do you have surgery today? So it's not just one was a sprained back. It's – they're really not necessarily connected at all. Unless the sprain was really aggravated. Correct. But to be fair and to not misrepresent the facts, Mr. Hunt did have a – he had a bad back for lack of a better term. He did have a history of spinal injuries and sprains. But certainly nothing ever close to like what he had after the combat training injury. Thank you. Thank you, Counsel. Counsel. Please report, Counsel. My name is John Dundas, and I was at the L.E.A.N. interview on this matter in the city of Peoria. This case involves the protection of the city of Peoria for its compensational lien. The courts, including the West Virginia court, have repeatedly stated that the protection of overcompensation liens are of utmost importance. Well, there's no doubt about – no doubt about that. It's actually been clear, and it's been clear for a long time. It has been clear for a long time. It's also been clear, Your Honor, that it can only be reduced per the terms of the statute. It's the statute that created the lien. Therefore, it can only be reduced per the terms of the statute. The plaintiff has argued that the city of Peoria lien should be reduced because the city of Peoria documented or firmly put forth medical evidence into this civil action, demonstrating actual physical causation in this case. And there's nothing the statute requires. In fact, the statute in the case law is very clear. But are you arguing that – let's say that it wasn't just a month from a return to work and then this accident, but that any time that there are – that there's a subsequent claim or an injury or that they're always going to be lumped together if you hadn't finished them out, and then you're going to – you know, where there is a third, perhaps short piece, that you're always going to be able to go back to that and get that settlement, whether or not there's any connection between the injuries? No, Your Honor. And there is a procedure, which is shown in that threat versus type of case, for a plaintiff to come in and they have to firmly prove that it was not connected in any way to the second accident. But they would have to show its causation to a separate distinct injury, and that's what the case law talks about, a separate distinct injury, sort of fully unrelated to the accident for which the government received it. The plaintiff has never argued that he has proved that. I think that's an issue. He argued that here, but in this brief, rough matter, he's never put forth evidence that he has proved that. In fact, he put the evidence in the case, which I want to get some of these issues up with in reply. But it's not all in detail. But his own testimony proves that there's not a separate distinct injury. He testifies that the district said he was asymptomatic prior to this injury, and then he said he was back with baseline prior to this alleged training accident. And then, in addition to this testimony and from the evidence that's in the pension board hearing, that he had complained of this injury up until the time of the accident. He complained of it the morning of the accident. He told the officers that were conducting the training that he had this injury, he may not be able to complete everything. He completed everything that day of the training accident. Absolutely nothing happened in the accident, in the training accident. There's nothing he can point to. There's nothing he can say that's happened in this injury at that time. Nothing happened. It was four days later, then he had a back injury, which, again, the evidence, I think, was probably excluded in a way that we are going to stipulate, which I'll go to Dr. Kuby's text and testimony. But it was four days later when that happened. And Dr. Kuby's report did point out he did not say that this was a separate distinct injury. He did not say that this condition was caused solely by this training incident and not the motor vehicle accident. In fact, he says that the training incident was certainly a – I'm just mentioning the motor vehicle accident was certainly a causal – was certainly an aggravated – I'm sorry, I'm referring to the training incident. He said it was an aggravated back injury, possibly a causal back injury. It makes no finding that it was a separate distinct injury. Possibly a what? Possibly a causal back injury. It was no finding that it was a separate distinct injury. And that's what he's proved in this case. And in fact – And some of these depositions were kept out. They were not. Correct. So this was – and just – the other judge, Dr. Singh, that started Dr. Kuby's deposition, didn't actually further the gate, the claim, because he supposedly found there was no part of that. He said it would not have happened this way. And it's not in record because Judge Corey's ruling was, if I allow these depositions to come in, I'll allow you to introduce Dr. Singh's deposition. But after Dr. Singh's deposition, there was no causation all the way to the alleged training incident. So there was no proof in that case. They were correctly excluded, Your Honor, because this is not under Rule 212, I believe it is. These were depositions taken in a separate cause of action. They were not in the same manner, which is what the Supreme Court will allow for the doctor's deposition to be taken to be interdicted. This is former testimony. It was in the workers' compensation claim, which is related to the training accident, not the motor vehicle accident. So this is former testimony, and not the court... So it's former testimony from the prior... From the prior proceeding. Yes, sir, from the prior proceeding. The workman's compensation. Correct. The prior workman's compensation, and not this latest. Correct. So if he had decided to take another deposition, have Dr. Kuby's deposition taken related to the motor vehicle accident, in this cause of action, then the Supreme Court rule may apply. That is not what happened. They attempted to introduce former testimony, but no hint that the doctor was unavailable. Therefore, it was a proper deposition. And again, Your Honor, that was waived. In the pre-consideration, Judge McCuskey specifically asked, I believe I have a quote here, does anybody want me to go back and look at that position? Mr. Hunt's, attorney's answer was, no, Your Honor. And the whole idea of a waiver is that the court should have the opportunity to get through the error, to be presented to them, and to correct that error. The court simply asked if that was an error, whether it should be corrected, and the Supreme Court said no. Therefore, it was correctly denied. What about the, sir, do you think there was a sufficient attempt to require one party or the other to put on evidence to show what relates to what injury? He was provided the opportunity. In his brief, he keeps saying that we do not produce medical evidence, we do not produce medical evidence. There was no burden on his way to prove medical evidence. He was provided the opportunity to provide medical evidence, any medical evidence he wanted to prove in that injury. Well, if there was one accident, but isn't there, you know, the company is based on a relationship between that injury and what the company paid out, right? Correct. Okay. So, hypothetically, if the person got first an injury in his left shoulder and received medical treatment for it and worked to get compensation for it,  could the cop from the right to the back, could the workman's cop, people then say, well, now he's got another injury, he's getting money for that, so we're coming in to get the money? No, because in that case, the company could request that injury or have an injury and want to make a proof that it was an old connection between that injury. It was connected to the arm, not the back, right? Correct. So, why wouldn't there be a right to have a connection in this case if there's a claim that there's a difference between an injury? In this case, it's a collateral cost. That is another issue. But in this case, he had that. And that goes to preference. All that had to do with preference. Preference originally would have been what Plankton was asking to have in his present case. But Plankton went in and said, I have a, there are two injuries, reduce the lien. And the trouble with that, both folks said, no, you did not do that. There was no proving of a separate, distinct injury. They did not prove it was not causally connected to the second injury. I mean, I, you know, I'm aware of those cases. And so I wonder, initially, whose burden is it? Because on one hand, the workman's compensation lien, the statute does, you know, once it's, you know, we're talking about the same injury, then I just present the lien. But if there's these two different injuries, who would have the burden first to go forward? Because it doesn't seem on the statute, if there's a requirement that you're coming in to get it justly, a return of the money you spent on the workman's compensation, you have a statutory right to claim. Don't you have to meet the first thing that it's, that it's related? There is no burden on the person. If there was just one claim, but if there are two different claims, I'm trying to find out the language of the statute. But you know what I'm talking about. When it says you have a lien, you have a lien on something. And usually when there's no fight, nobody's debating what that something was and it's connected. But when there's a dispute about what something is, who has the burden to come forward first? Wouldn't it be the workman's comp people to show that you meet the statutory? No, because the employer doesn't need to intervene in that case until something comes up that says, until the employer tries to say, hey, I don't have the insurance, it's not a lien. We have no requirement to intervene in that case. We have a very limited ability. Even if there is a case where we want to do that, our sole purpose of being in that would be, there's limited to the ability to ensure that the owner or the debtor. I mean, but it's so different than, you know, if you have this hospital. Well, the hospital has to show that these are reasonable charges and so forth, right? Yes, but this is not a hospital. Well, I know it's not a hospital. But I mean, there are a lot of people that don't show up and can't show up until, I mean, you file things to make sure you've got a record that this thing is out there and somebody doesn't run away with the money, right? Correct. Okay. That prevents that. But usually there's, I don't know, it just seems that under the statute, when you're talking about possibly two different entries, you know, you're suggesting that you wouldn't have a burden to show a connection between the two. No. In fact, in the first step, there isn't a burden. They never mention the burden of an employer to come in and prove it. All they have in front of us is the plaintiff did not prove it, therefore we are overruling the trial for it. Let's go back to my thing. First there's a shoulder injury. Yes. Then there's an injury to the back. And the work is accomplished for the shoulder injury. So then when there's a recovery on the back and if there was an attempt to claim some of it related to the shoulder, what would happen? In that case, if the employer claimed a lien, the plaintiff would likely say there's not a plausible connection here. We didn't mention your injury. The plaintiff would have a very easy case in that state. This is not a plausible connection. So in that case, the burden would be on the employee to prove it. Yes. It would be a pretty easy burden in that situation. But it would still be, once the lien is filed, then you're saying the employee would say, stop, you shouldn't get anything because it's not about the shoulder. Actually, the lien is going to be filed. You talked about the fact that the lien is not required. All the instructive notice of the plaintiff, then they would have to do something to come in and say. Well, there's got to be a notice of something. There's something that you put them on alert. Court-assisted instructive notice. They don't even need to have that. I know. That's what I mean. But there's something like a notice or something that's got to be, you have to show that they were made aware of it or they were aware of it, right? Right. That's the only requirement. Correct. That's a pretty easy one. Yes. Yes. Very easy. Employee has to look at the numbers. Right. And, again, I want to put it rather quickly that, in that case, the court has expressed extreme skepticism whether or not they could prove at the eventual hearing of a separate state case. That's an enormous compensation case. Every case is far from that. The court noted that is a very difficult thing to do when you actually see an injury go forward that is going to be a very difficult thing to do. But that was an assumption, not something proven. Right. And they provided an opportunity to look back on the drop-off of capital at the eventual hearing and just express skepticism. There was no mention anywhere that some burden of the employer coming in could provide any sort of medical evidence to prove anything in order to repeat that. Obviously, the employer had an opportunity at the eventual hearing to comment on that. We did, in this case, hold them responsible in testimony. And if those depositions were to be allowed in, whether or not Dr. Singh's deposition would have been there. Right. This is another show on this cloud. Stop. Let's double up. Partner for you. I am running out of time. So I want to do this. There was a case here. Now, we received absolutely everything we asked for in the trial court level. And the court is very clear. I have a couple of Supreme Court cases and quotes on there. Didn't identify them all. But they were very clear that the party who received everything they asked for in the trial court level cannot possibly be improper. You do not have the right to cross-appeal on issues because you were on different grounds. If it were the proper way for us to do that in front of this court, it was on our response. And that is reflected. We could not restate it, Your Honor. Additionally, Your Honor, they claim that we could study the second case of Bensky versus Mulderline to avoid federal stoppage. That case involved the issue not of causation, but whether or not the extent of rose out of employment for the workers' compensation for active duty and attention for proceeding, which are two separate standards. Causation was not an issue. Two minutes, please. Thank you. These short-term versus long-term cases, very similar to this one, where the plaintiff did loss to the workers' compensation level because, as I mentioned, the seats did not cause it. The same issue was up when he sued. He made it back to the seats, and they said that's the exact same issue. So the seats are the same there. And also, this is not an offensive level stoppage, Your Honor. The offensive level stoppage is when a plaintiff seeks to use a prior judgment to preclude a defendant. The reason they have to do that is because they want to. Well, a federal stoppage can be an issue in conclusion, too. It is. That's what I said. It's a causation. That's right. And offensively, there is some causation in that. That's not what the manager did, Your Honor. It's not the same as reserving the college, though. Right. And that's the issue that was going on. My reason for them was they could not do it, because legally, that bench-reward decision precluded them from relaying the issue of whether or not this separate action was the cause of injury. That's the only way you can go forward with a threat, or any matter, by showing a separate injury was the sole cause of some portion of this claim. And that's the only way to do it. Even if you were looking at it. But not necessarily the sole cause. It was an aggravation, and that's the one where there was compensation added to that. So they wouldn't even show a separate statement of injury, which is the case of all injuries that we know of. In this case, that wasn't actually one of them, and they couldn't actually do that, because of a probable cause. And I believe that's all the time I have. Okay. Thank you. You know, the judgment we're reviewing is McCuskey's, right? Correct. Correct. We appealed the October 2017 order, essentially its entirety, against the statute of obstruction. And we appealed the one portion of the judge's court saying that the witnesses were unavailable in keeping those medical depositions out. But at the McCuskey hearing, did you ask for a new ruling? I believe it was a reconsideration. Yeah, that's right. It was a reconsideration. Yes. So that's right. Correct. We didn't. That's right. There was a reconsideration. I think Mr. Nunn has touched on, indirectly, what the real problem with the city's position is. And he said, you know, aggravations are compensatory under the Act. And in this case, the city has denied paying Mr. Hunt any permanency on either of his working days. But they want to take every penny of his personal insurance settlement. And if the court sides with the employer in a case like this, it's going to allow them to do that. It's going to allow them to come into court when there's a third-party case and say, we have statutory construction. We're taking every penny of the settlement and then deny, on the other side, paying the worker damages for a third-party case. That's what happened in this case. They want their cake and they want to eat it, too. And that's why there was a request to admit file in this case when the case was resolved, saying, well, admit or deny, the surgery is related to this. And if they admit it, they can have every penny they want at the lien. But they didn't want to do that. They refused to answer it on the basis of saying they weren't a third-party case. They wouldn't have admission in the cop case. So they could try to take all of Mr. Hunt's money and then not pay him anything in the work cop currency portion of the case. So if we go to a point where we create a lien, and Judge Carter touched on it, like the hospital lien. The hospital has to lien up their lien. This would be the only lien that I'm aware of, type of lien in the state of Illinois, where the person paying the money has to disprove that they have to pay the money. I mean, the burden in every other situation is on the person trying to collect the money. It may not be a high burden, but there's some burden saying, look, if it shows a bill was approved, a hospital lien, a medical provider lien, that's causally connected to the case. And they want to have a special circumstance. They don't have to do anything. They can just come to me and say, I'm going to take all this money, period. They don't have to admit that it's causally connected. They don't have to do anything. Also, in the idea that he was arguing that, well, the plaintiff has to disprove that these things are related. And I think we actually did that, too. When you look at the city's own payment logs, their own documents produced by the city risk manager, the logs clearly state $5,000 auto accident, $119,000 combat training. Mr. Hunt testified he never had pain like that, like he had after the combat training, and that his symptoms were markedly different. So there is evidence disproving that it's all stemming from this low-impact motor vehicle accident that he treated and had physical therapy for and had a full return to work. And so I do believe, and I think the court looked at this, there has to be a relationship between the injury and what the work cop paid out in an attempt for them to recover that. They can't stand here and say, well, aggravations are compensatory, while at the same time denying the work cop claim that their claiming allows them to take the entire personal injury settlement for injured police officers. Thank you. Thank you, Counselor. Thank you both for your arguments. The court will take this matter under advisement.